[No. 24079. Department One. January 31, 1933.]

J. R. DELVENDAHL COMPANY, *Plaintiff*, v. JOHN E. LYDON *et al., Respondents,* UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant.*[1]

[1]Reported in 18 P. (2d) 492.

552

*Eggerman & Rosling,* for appellant.

*Hartman & Hartman,* for respondents.

PARKER, J.—This action was commenced in the superior court for Skagit county by the plaintiff, Delvendahl Company, seeking recovery in the sum of $14,876 as a balance alleged to be due to it by the defendants Lydon and wife upon its contract with them for its construction of an apartment house for them in Mt. Vernon, in that county; and also seeking foreclosure of its lien claim in that amount for material and labor furnished in such construction.

Lydon and wife, by answer and cross-complaint, resisted the claim of Delvendahl Company, and brought into the action as defendant the United States Fidelity & Guaranty Company, as surety upon its construction contract bond, seeking recovery of damages against Delvendahl Company and the guaranty company in the sum of $21,181, alleged as the result of failure of performance of the construction contract. Lydon and wife also, by their cross-complaint, brought into the action, as parties thereto, several lien claimants, to the end that their rights might be adjudicated in the action incident to the alleged damage liability of Delvendahl Company and the surety company.

The cause, being of equitable cognizance, proceeded to trial in the superior court, sitting without a jury, and· resulted in a decree denying to Delvendahl any recovery or lien right, adjudicating lien rights favor-

able to several of the other lien claimants, and award-
ing to Lydon and wife recovery against Delvendahl
Company and the guaranty company, its surety, in the
sum of $7,655, that being by the court decided to be the
net amount Lydon and wife will have to expend in com-
pleting the performance of the construction contract,
including payment of lien claims, in excess of the net
contract cost of the building, after allowing for certain
agreed extras and deductions. From this award of re-
covery, the guaranty company alone has appealed to
this court.

On July 9, 1930, Lydon and wife executed and de-
livered to the Barron Corporation, a corporation or-
ganized under the laws of this state, their promissory
note evidencing a loan to them from that corporation
in the sum of sixty-one thousand dollars, payable in in-
stallments bearing six per cent interest per annum.
On the same day, to secure that indebtedness, Lydon
and wife executed and delivered to that corporation a
mortgage upon their lot in Mt. Vernon, upon which
they contemplated constructing the apartment house
here in question. The purpose was to thus partially
finance its construction, plans and specifications hav-
ing theretofore been prepared therefor. On July 31,
1930, that note and mortgage were duly assigned to
the Prudential Savings & Loan Association. It was
agreed that the proceeds of that loan would be ad-
vanced by the loan association from time to time as the
construction progressed.

A form of construction contract had then been pre-
pared to be later executed by Delvendahl Company as
contractor and Lydon and wife as owners, the provi-
sions of which, so far as need be noticed in our present
inquiry, read as follows:

"First: The contractor agrees to furnish all labor
and materials for one certain apartment house to be

erected on Lot 1, Block 9, Riverside Addition to the City of Mount Vernon, Washington, according to plans and specifications prepared by E. T. Osborne, Architect, which said plans and specifications are mutually initialed for identification. . . .

"Eighth: The owners agree to pay the contractor $95,000 for the construction aforesaid upon the following terms:

"(a) The owners shall in writing prior to the commencement of construction hereof, instruct the Prudential Savings & Loan Association to pay all monies from one certain first mortgage hereon to the contractor. The owners specifically agree such payments shall be in the following amounts;

(1) One-third (1/3rd) of the said mortgage less 15% of said one-third, when the roof is completed. (2) One-third of the said mortgage, less 15% of said one-third when the apartment is plastered. (3) The balance upon completion of the said apartment, or within ten (10) days thereafter. (4) It is specifically guaranteed by the owners that the cash proceeds from the said first mortgage will amount to $55,000. In the event the cash proceeds shall be less, the difference shall be paid in cash by the owners to the contractor within ten (10) days after the completion of the said apartment.

"(b) The owners shall execute to J. R. Delvendahl as trustee, one certain second mortgage, the total proceeds of which shall be payable to the J. R. Delvendahl Co. as follows:

"The said second mortgage shall be prepared by John P. Hartman, attorney for the owners, subject to the approval of Peyser and Bailey, attorneys for the contractor. The costs incident to the preparation of said second mortgage, including the printing of any second mortgage bonds or trust certificates, shall be paid by the owners. The amount of the said second mortgage shall be the difference between the contract price hereinabove stated and $55,000.

"(c) The owners agree to subscribe for in cash $5,000 worth of second mortgage bonds or certificates. It is agreed that the cash payment for the same shall

be in the hands of the contractor prior to the commencement of construction. . . .

"Twelfth: The owners shall pay in cash for all extras added to the plans and specifications. The contractor shall furnish a performance bond in the sum of $95,000, the cost of which shall be paid for by the contractor."

On August 12, 1930, that form of contract, unchanged, was actually executed by being signed by the respective parties thereto, though it appears to be dated June 30, 1930. On the day of the execution of the contract, that is, on August 12, 1930, or very soon thereafter, the United States Fidelity & Guaranty Company caused to be delivered to Lydon and wife a bond, in the sum of ninety-five thousand dollars, duly executed by it, securing the performance of the construction contract by Delvendahl Company, referring to the contract as being of the date of June 30, 1930. It seems plain that a carbon copy of the contract, as finally executed, was in the possession of the guaranty company when it prepared and signed for delivery, as surety, the construction contract bond, which reads as follows:

"KNOW ALL MEN: That we, J. R. Delvendahl Co., a corporation, hereinafter called the Principal, and United States Fidelity & Guaranty Company, a corporation of Baltimore, Maryland, and hereinafter called the Surety or Sureties, are held and firmly bound unto John E. Lydon and Martha E. Lydon, hereinafter called the Owner, in the sum of Ninety Five Thousand and no/100 Dollars ($95,000) for the payment whereof the Principal and the Surety or Sureties bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly, by these presents.

"WHEREAS, the Principal has, by means of a written Agreement, dated June 30th, 1930, entered into a contract with the Owner for construction of an apartment house to be erected on Lot 1, Block 9, Riverside Addi-

tion to the City of Mount Vernon, Wash., a copy of which Agreement is by reference made a part hereof;

"Now Therefore, the Condition of this Obligation is such that if the Principal shall faithfully perform the Contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the Owner all outlay and expense which the Owner may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

"Provided, however, that no suit, action or proceeding by reason of any default whatever shall be brought on this Bond after twelve months from the day on which the final payment under the Contract falls due.

"And Provided, that any alterations which may be made in the terms of the Contract, or in the work to be done under it, or the giving by the Owner of any extension of time for the performance of the Contract, or any other forbearance on the part of either the Owner or the Principal to the other shall not in any way release the Principal and the Surety or Sureties, or either or any of them, their heirs, executors, administrators, successors or assigns from their liability hereunder, notice to the Surety or Sureties of any such alteration, extension or forbearance being hereby waived.

"Signed and Sealed this 1st day of August, 1930.
 J. R. Delvendahl Co. (Seal)
 J. R. Delvendahl, Pres.
 United States Fidelity &
 Guaranty Company (Seal)
 By O. H. Campbell,
 Attorney-in-Fact."

On August 12, 1930, there was also executed by Lydon and wife and delivered to J. R. Delvendahl as trustee a second mortgage upon the property to secure

a further loan of forty thousand dollars to be evidenced by bonds executed by them, payable to bearer; this being in pursuance of the above quoted portion of the construction contract. It was understood that this was for the further financing of the construction contract.

Soon thereafter, the construction of the apartment house was commenced by Delvendahl Company and prosecuted to a stage considerably short of completion; during which period of construction the property became encumbered by numerous labor and material liens, to the damage of Lydon and wife. For such damage, and for damage resulting to them from the failure of Delvendahl Company to complete the building according to the construction contract, they were awarded by the decree of the trial court recovery against the guaranty company, as well as against Delvendahl Company, in the sum of $7,655.

The trial judge did not make formal findings of fact, but did in a memorandum opinion review the facts in considerable detail. The foregoing summary is in harmony with his view of the facts therein expressed.

It is contended in behalf of the guaranty company that Lydon and wife breached the construction contract in failing to perform their financial obligations thereunder, thereby preventing Delvendahl Company from effectually performing the contract, and that, therefore, they should not be awarded any recovery against the guaranty company upon its bond securing the performance of the contract.

One of such claimed breaches of the contract on the part of Lydon and wife is that they did not subscribe for five thousand dollars of the second mortgage bonds and pay over to Delvendahl Company that sum prior to its commencement of the construction, thus impairing its ability to finance the construction. Delvendahl Company waived this provision of the con-

tract, and proceeded with the construction without making any demand for this contemplated advance payment to it. The evidence warrants the conclusion that Delvendahl Company either had this subscription made by others or it assumed the making of such subscription for itself. Plainly, we think this was not such a material alteration in the contract as to lessen the liability of the guaranty company as surety upon its bond, particularly in view of the concluding provisions of the bond above quoted.

 Further contention is made, as we understand counsel, that Lydon and wife caused or permitted several thousand dollars of the second mortgage bonds to be appropriated otherwise than to the financing of the construction by Delvendahl Company. It does appear that $1,500 of the second mortgage bonds were by Delvendahl Company caused to be turned over by the trustee under that mortgage to attorneys as their fees for legal advice and the drafting of the forms of the two mortgages and the bonds to be secured thereby; and thus, in a sense, the proceeds of those bonds were not directly used in financing the physical construction. But manifestly, this was voluntarily done by Delvendahl Company in recognition of the claim made by the attorneys in that behalf. Lydon and wife consented to this. The other bonds of the second mortgage appear to have passed into the hands of Delvendahl Company and the proceeds thereof used by it without control upon the part of Lydon and wife.

In this connection, it is to be noted that the contract made no provision as to how Delvendahl Company should use the bonds or the proceeds thereof. The guaranty company knew that there was no such provision in the contract when it executed and delivered its bond securing the performance of the contract. We

are of the opinion that Lydon and wife were not responsible to the guaranty company as to Delvendahl Company's use or disposition of those bonds or the proceeds thereof.

Further contention is made, as we understand counsel, that Lydon and wife breached the contract in failing to make good their guaranty that the proceeds of the first mortgage bonds would amount to fifty-five thousand dollars. Counsel seem to overlook the terms of sub-section 4 (a) of section 8 of the contract, that expressly give Lydon and wife "ten days after the completion of said apartment" to make good or pay such deficiency. That time has never arrived, in so far as Delvendahl Company is concerned, for it never completed the construction.

Further contention is made that there was fraud on the part of Lydon and wife inducing the guaranty company to execute and deliver the bond securing performance of the construction contract. This contention is rested upon facts occurring during the negotiations for the execution of the bond before its final execution and delivery on August 12, 1930, on which date the contract was also finally executed, and on which date the guaranty company had been, during a period of several days preceding, in possession of the form of the contemplated contract, which was finally executed without change.

It seems clear to us that there was no misrepresentation by Lydon and wife to the guaranty company as to the nature of the contract it was, by the bond, securing. We agree with the trial judge that no change in the construction contract was made by agreement between Delvendahl Company and Lydon and wife, or by waiver on the part of either of them, to the legal prejudice of the guaranty company, and that there was no fraud on

the part of Lydon and wife inducing the guaranty company to execute the bond.

The decree awarding recovery in favor of Lydon and wife against the guaranty company is affirmed.

TOLMAN, HOLCOMB, MITCHELL, and MILLARD, JJ., concur.